**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:                                              CHAPTER 13

                                                    Case No.  **22-41414-nhl**

**MENDEL PANETH,**

              the Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# Brief in Support of Retention of Jurisdiction
## and
## <u>Rejection of Permissive Abstention</u>

**Dahiya Law Offices, LLC**
*Litigation Counsel for the Debtor*

**Karamvir Dahiya**
**75 Maiden Lane Suite 606**
**New York New York 10038**
**Tel: 212 766 8000**

**Introduction**

Section 1334 (c)(1) permits this court, "in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). It permits permissive abstention at the Court's discretion. But this is not the case for such indifference. Mendel Paneth (Mendel), the debtor who has taken refuge in this Court is a victim of fraud, involuntary servitude, and abuse. Mendel had been thrown to the labyrinthine plots cruel trickery by a group of racketeers who are operating a systematic enterprise in the guise of religious affairs to corner a family for the sole purposes of exploiting them. Mendel needs this Court's protection. He is vulnerable and hurt. He lives in fear and terror of what will come next to him and his family.  He has spoken in his words. He is gifted. This case is not a routine case, nor the protection sought here is of a mundane matter. Attached is his declaration.  The Court will find and be compelled to utter what Michelangelo said, "I saw the angel in the marble and carved until I set him free."  Mendel's freedom lies with the Court. Without the Court's protection, a family would wither. Mendel is an immigrant orthodox Jew, married with five children.  The Court would find in the declaration, a young man with deep faith in his community who has been wounded and cornered. Not only there is a betrayal of trust, the complained of racketeers used means to subject Mendel  that were not only unethical but criminal.

Mendel's sums up his passion and life pursuit,

> In the Beginning... when I was 30 years old and naïve as to the ways of the world, I had an inspiration. As a Graphic Artist, Educator, and lover of History, I realized that ultra-Orthodox children were missing an important element in their education: learning about the world outside their close-knit community. I believed, with my youthful, idealistic enthusiasm, that I could expand their knowledge base in a fun way that would help them succeed in the modern world, while retaining their core religious values. My unique technique to accomplish this goal would be using the form of a comic book as an exciting way to learn.

Genesis, Decl. p. 5. Clearly, Mendel not only is passionate, but his talent also animates even in this very painful ordeal that he confronts every day, minute of his life. At stake is not only the talent, but also the family with a devout wife and  five that looks at their father for their needs and love.   These are subject of protection of this Court. It is not only about Mendel, It is about his family, children and the gospel that he wants to live with—he wants to bring value to his community  and family and ultimately to himself. Mendel is trapped by a ring of racketeers, operated by David Reiner (Reiner). And the enterprise used for that means was the arbitration presided over by Reiner's friend, Moshe Bergman.  Mendel prays to this Court to set him free from that involuntary servitude.

## Procedural Background[1]

On June 19, 2022, Mendel sought Chapter 11 bankruptcy protection.   The reason was simple, Mendel was in a trap. He wanted justice and freedom to speak about the injury caused to him by Reiner and other racketeers including the arbitration. Reiner controlled and operated the mediation and arbitration, as full detailed in Mendel's Declaration. Mendel cried about the abuse in the religious proceedings and brought to attention the corruption there, he was ignored.  Mendel was cornered and financially abused,

> On another date, at the beginning of the session hearing, I brought a required check to Rabbi Bergman. As I handed it to him, Reiner yelled "I hope it won't bounce. He's running out of money… … This guy's going bankrupt. He doesn't have any money left" . They all joined in laughing at me: Vider (Reiner's attorney); Spiegel (Reiner's Rabbinical Advisor), and Rabbi Bergman himself. My Rabbinical Advisor, Rabbi Gold, got furious at this, and said "What does Justice have to do with money." Reiner then said to Rabbi Gold "Make sure you get paid."

---

[1] The factual details are in Mendel's declaration and as well as prior objection filed against the motion to lift stay.

Mendel Decl. P. 31, 32. Mendel painfully, yet with a gifted narrative brings to light the ordeal he had to go through. The pictures and the words are alive in his declaration. The Rabbinical arbitration tribunal and its maneuverings were pointed out by the Mendel's attorney,

> "Rabbi Bergman, frankly this schedule give on Friday evening when you have known, because you excused participation in this afternoons originally scheduled, that I am committed for this afternoon, is impossible to meet. And it deprives our client of due process and sufficient time and notice to appear for a trial that you have now for the first time [provided] a defined schedule.
>
> There is no proper arbitration that provides this notice which amount[s] to no notice. This seems nothing more than another action taken by you where you have had ex parte communications with Mr. Vider, or his office and you do his bidding. Having commented the way he did before you, without a court reporter, and in view of the prior conduct of intimidation and harassment that you participated in, you must recuse yourself, as my client clearly cannot get a fair hearing.
>
> Indeed, Mr. Reiner admitted in your presence, by holding his hands wide apart of at least 12-14 inches, that he paid Rabbi's a pile of bills as a bribe for their taking his side
>
> Your glib comment that there are no conflicts shows that you do not take the issue of conflict seriously, in that you have made no effort to ascertain the names of witnesses and parties and have failed to disclose prior matters that you have had with counsel , their advisors, and the parties.
>
> No waiver contained in any arbitration agreement that you participated in coercing by telling my client that if she did not sign an agreement to arbitrate would result in an adverse ruling against her husband can result in a waiver of all due process except the right to counsel. YOU MUST AND HAVE NOT PROVIDED MINIMAL DUE PROCESS AND NOTICE AND YOU CERTAINLY DO NOT APPEAR TO BE IMPARTIAL IN THE FACE OF A PARTY WHO GLOATS THAT HE BRIBES RABBIS".

Mendel Decl. P.33. The religious arbitration had turned into a corrupt racketeering enterprise extorting monies and work from Mendel. The so called arbitration commenced in May 11, 2020 as a mediation invoked by Mendel. On this date Mendel presented his argument to Bergman the mediator. The next day May 12, 2020, Reiner presented his arguments.  On May 14, 2020, both Mendel and Reiner came back to the mediator, that is when Moishe Bergman render his mediation

opinion.  Because of what Reiner had been doing, it became very hard for Mendel to work with Reiner.  There were three mediation sessions. On June 24, 2020, Mendel was again brought to a new  process, which Reiner labels as arbitration.  There were several sessions until September 10, 2020.  On October 1, 2020, Moishe Bergman rendered his interim decisions.    On or about June 16, 2021, Mendel was again sent to the arbitration. Now the arbitration continued until February 2, 2022. This was the last session with the arbitrator Moshe Bergman.  There were twelve sessions between June 2021 and February of 2022.  In the year 2020, there were seven sessions, the first three were the agreed mediation and second four were the arbitration proceedings. None of the activities were productive. Mendel and his wife incurred an obligation of approximately $587,346. This is an unfinished alleged arbitration bankrupting Mendel and his family.  All his savings were finished, Mendel was cornered, He had nothing to support his family.

The bankruptcy filing stopped the torture for Mendel and his family. All parties were informed of the filing.  On September 20, 2022, Reiner commenced an adversary proceeding objecting to the bankruptcy discharge of the Debtor under different provisions alleging false pretenses, false representation, actual fraud, fraud as fiduciary, embezzlement, larceny, and willful and malicious injury.

On September 23, 2022, Reiner moved to lift the automatic stay to compel Mendel to the religious arbitration.  For proof, Reiner used  a "Partnership Agreement" and an "arbitration agreement," to make a case to enforce arbitration. ECF # 33-1.  However, none of the said compel arbitration agreement, as properly adduced and reasoned in the opposition file by the undersigned. ECF # 50.

Both the Adversary Proceeding  and Motion to life stay asserts the same facts, which are germane to the core proceeding to the issue of Dischargebility.  On October 2022, Reiner also files

two Proofs of Claim, one for himself (claim No. 9-1)  (and other for Kidline Enterprise (Claim No. 10-1) both for $4,386,347.00 premised on the same reasoning as asserted in the Adversary Proceeding and the Motion to lift stay. Interestingly, the value to the Kidline, the subject of the dispute, was provided solely by Mendel. Kidline was a comic book, a brainchild and sweat of Mendel.

Full participating in the bankruptcy process, fully utilizing the benefits accorded to the creditors in the bankruptcy [upon expiry of the exclusivity] Reiner  filed on October 25, 2022,  his Chapter 11 Plan dated October 25, 2022 with the payment scheme of 25% to the unsecured creditors along with a Disclosure Statement.  ECF # 47.

Under the proposed Reiner's Chapter 11, Liquidation Plan, Reiner proposed to (1) sell Mendel's family home (2) subject Mendel to monthly installment of the disposable income for five years and (3) have a plan administrator accomplish the foregoing besides commencing litigation.  Reiner participated in the proceedings.

On November 7, 2022, the Debtor moved to convert the case to a Chapter 13 case, as the Chapter 11 would be more expensive and also that the Debtor could avail Chapter 13's cram down provisions.  The Court converted the case to Chapter 13 on January 25, 2023.

The issue is simple, if based on what happened to the Debtor in the religious arbitration, would this court abstain from hearing the underlying issues, the very core issues that goes to the heart of proceeding in dischargibility adversary proceeding initiated by Reiner, allowance and disallowance of claim as filed by Reiner when Reiner fully participated in the bankruptcy proceeding including filing Chapter 11 plan to liquidate Debtor's home, the estate marshalling of assets (collectively, the "Dispute").  And also, keeping in view that most expensive bankrupting

arbitration proceeding, incurring a debt of approximately $600,000 with no result. And where the arbitration is a corrupt enterprise.

### The Dispute is properly before this Court.

The underlying dispute is properly before this Court. The dispute here deals with marshalling of estate assets, exemption, pending objection to discharge and an allowance and disallowance to the Proof of Claim to be filed by the Debtor. These are core proceedings with the Court empowered to enter complete judgment.

Reiner improperly took over what now would have been property of the estate. 28 USC § 157(b)(2)(H) (proceedings to determine, avoid, or recover fraudulent conveyances). Estate interest has to be known of the Debtor in third party entity. It is a core proceeding. 28 U.S.C. § 157(b)(E) ("orders to turn over property of the estate"). Even proceedings not specifically listed may be core proceedings if they concern fundamental functions of the bankruptcy court, such as determining the nature and extent of the estate. *In re* Goodman, 991 F.2d 613 (9th Cir. 1993) (proceeding brought by debtor-subtenant to enjoin unlawful detainer against tenant was core proceeding).

Reiner brought objection to Discharge. 28 U.S.C. § 157(b)(J)( Objections to discharges). "An objection to discharge" is a core proceeding over which the bankruptcy court exercises jurisdiction." *In re Kontrick,* 295 F.3d 724, 732 (7th Cir. 2002), *aff'd sub nom. Kontrick v. Ryan,* 540 U.S. 443, 124 S. Ct. 906, 157 L. Ed. 2d 867 (2004).

Reiner has filed a Proof of Claim against the estate of the Debtor.  Objection to the Proof of Claim is a definite core claim. "Allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims of interest for the purposes of confirming a plan under chapter 11 or 13 of title 11" are a core proceeding.  28 U.S.C. § 157(b). See *In re* Manville Forest Prods. Corp., 896 F.2d 1384 (2d Cir. 1990); *In re* Meyertech Corp., 831

F.2d 410 (3d Cir. 1987) (creditor's breach of warranty action was a core proceeding seeking allowance of claim).

Also, the mere fact that there could be some state law implicated, does not devolve it to a non-core proceeding. 28 U.S.C. § 157(b)(3). *See In re Manville Forest Prods. Corp.*, 896 F.2d 1384 (2d Cir. 1990); *In re Wood,* 825 F.2d 90 (5th Cir. 1987); *In re Martinez*, 2007 WL 1174186 (Bankr. S.D. Tex. Apr. 19, 2007) (rejecting argument that objection to creditor's claim based solely on Truth in Lending Act and state law is non-core proceeding).

And the Debtor is a victim of racketeering enterprise operated unlawfully for unlawful purposes by Reiner as the declaration of Debtor highlight the plight in detail. Debtor has claims and shall sue Reiner. 28 U.S.C. § 157(b)(2)(C), (O); *In re Baudoin,* 981 F.2d 736 (5th Cir. 1993) (debtor's lender liability suit against creditor was core proceeding). *In re Cassidy Land & Cattle Co.*, 836 F.2d 1130 (8th Cir. 1988) (debtor's action to foreclose on mortgage which constituted sole asset of bankruptcy estate is core proceeding in the nature of a turnover action).

And besides foregoing anything which impacts the estate or augment the estate could easily be deemed as a core proceeding. *In re Time Constr., Inc.*, 43 F.3d 1041 (6th Cir. 1995) (bankruptcy court has jurisdiction over proceeding if outcome could alter debtor's rights, options or freedom of action); *Abramowitz v. Palmer,* 999 F.2d 1274 (8th Cir. 1993) (action to impose constructive trust on non-debtor spouse's interest in home was related to bankruptcy case because home was purchased with fraudulently obtained funds and court needed to determine rights of spouse to fully and fairly resolve rights of debtor); *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261 (3d Cir. 1991) (test is whether proceeding could "conceivably" have any effect on the estate being administered in bankruptcy); *Robinson v. Mich. Consol. Gas Co.*, 918 F.2d 579 (6th Cir. 1990) (action brought by debtor's tenants against trustee and utility for wrongful discontinuation of utility

service was related proceeding because recovery was sought from estate); *Diamond Mortg. Corp. of Ill. v. Sugar*, 913 F.2d 1233 (7th Cir. 1990) (corporate debtor's malpractice action against former attorneys was related to corporation's bankruptcy case because resolution might impact on assets available for distribution); *Kaohani Ohana, Ltd. v. Sutherland*, 873 F.2d 1302 (9th Cir. 1989) (bankruptcy jurisdiction exists whenever litigation may alter potential obligations arising out of claims pending against the estate); *In re Contractors Equip. Supply Co.*, 861 F.2d 241 (9th Cir. 1988) (bankruptcy court had jurisdiction over suit between non-debtor third party and secured creditor because non-debtor was seeking to recover property in which debtor retained an interest); *In re Majestic Energy Corp.*, 835 F.2d 87 (5th Cir. 1988) (bankruptcy court could determine effect of agreement related to debtor's stock after plan confirmation because issues presented were related to the debtor's bankruptcy case and parties had consented to bankruptcy court determination); *In re Wood,* 825 F.2d 90 (5th Cir. 1987) (case involved possible liability of estate for wrongful appropriation of assets); *In re Xonics, Inc.*, 813 F.2d 127 (7th Cir. 1987) (payment to debtor's other creditors would depend on competing claims to pool of money); *In re Dogpatch, U.S.A., Inc.*, 810 F.2d 782 (8th Cir. 1987) (outcome of proceeding would have effect on estate and possibly impose liability on the debtor); *In re* S. *Indus. Banking Corp.*, 809 F.2d 329 (6th Cir. 1987) (cause of action arose because of bankruptcy proceeding and was based on bankruptcy law and debt alleged as setoff was owed by debtor).

Core proceedings subjects are not abandoned or deferred to other tribunals, they inhere with the bankruptcy court. Abstention is not mandatory here. However even with the non-core, the abstention is an exception and not a routine. Indeed, "abstention is an extraordinary and narrow exception to' the federal court's duty to adjudicate a controversy properly before it." *In re Taub,* 413 B.R. 69, 74 (Bankr. E.D.N.Y. 2009) (quoting *Eastern Airlines, Inc. v. Int'l Assoc. of*

*Machinists & Aerospace Works (In re Ionosphere Clubs, Inc.),* 108 B.R. 951, 954 (Bankr.S.D.N.Y.1989) (quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959)).

### Reiner consented to the jurisdiction of this Court

The amount of participation that Reiner had in the bankruptcy process even attempting to file plans, besides commencing adversary proceedings constitutes a complete consent to the bankruptcy court jurisdiction. *Saenz v. Gomez ( Saenz),* 899 F.3d 384 (5th Cir. 2018) (implied consent to liquidation of state law claim based on (1) submission of a pre-trial statement in which they listed no jurisdictional issues; (2) representation by experienced bankruptcy counsel; and (3) voluntary participation in the proceedings, including seeking affirmative relief by filing Rule 12(b)(6) motions and not expressing any limitations on its consent throughout the trial). Indeed, the Supreme Court and the Second Circuit court "consistently held,

> that in filing a proof of claim the petitioner submits to the bankruptcy court's equitable jurisdiction. *See, e.g., Langenkamp,* 498 U.S. at 44, 111 S.Ct. at 331 (per curiam) ("by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power"); *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 59 n. 14, 109 S.Ct. 2782, 2799 n. 14, 106 L.Ed.2d 26 (1989) ("by submitting a claim against the bankruptcy estate, creditors subject themselves to the court's equitable power to disallow those claims...."); *In re Manville,* 896 F.2d at 1389 ("[b]y filing a proof of claim, [the party] submitted itself to the equitable power of the bankruptcy court to disallow its claim").

*In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 707 (2d Cir. 1995). Not only has Reiner consented to the Court, the Court has the power to enter judgments.

Under the 1984 amendments to the 1978 Bankruptcy Reform Act all matters arising under the Bankruptcy Code (title 11 of the United States Code), or arising in or related to cases under title 11, are initially referred by the district court to the bankruptcy court. 28 U.S.C. § 157(a). In some proceedings bankruptcy judges are permitted to enter final orders, and in others they are

allowed only to submit proposed findings of fact and conclusions of law to the district court. 28

U.S.C. § 157(b), (c). However, a final judgment may be entered in such cases if the parties consent,

either explicitly or implicitly. *Wellness Int'l Network, Ltd. v. Sharif,* ___ U.S. ___, 135 S. Ct. 1932,

191 L. Ed. 2d 911 (2015).  28 U.S.C. § 151 grants bankruptcy judges "the authority conferred

under this chapter with respect to any action suit or proceeding . . . except as otherwise provided

by law or by rule or order of the district court." *United States v. Energy Res., Inc.,* 495 U.S. 545,

549, 110 S. Ct. 2139, 109 L. Ed. 2d 580 (1990) (bankruptcy courts, as courts of equity, have broad

power to modify creditor-debtor relationships). "This broad jurisdictional grant allows the

bankruptcy courts to "deal efficiently and expeditiously with all matters connected with the

bankruptcy estate." *Gupta v. Quincy Med. Ctr.,* 858 F.3d 657, 662 (1st Cir. 2017)

(quoting" *Celotex Corp. v. Edwards,* 514 U.S. 300, 307 (1995) (in turn quoting *Pacor,

Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984)). And that is why the Court must not abstain

from hearing the issue. Here it shall be "deal[t] efficiently and expeditiously with all matters

connected." *Id.*

No doubt, we have some issues that needs this Court's adjudication—objection to

discharge, objection to proof of claims, exemptions and other related issues—such circumstances

nudges the courts to retain jurisdiction. . *In re Lucasa Int'l,* Ltd., 6 B.R. 717 (Bankr. S.D.N.Y.

1980); *In re Bros. Coal Co.,* 6 B.R. 567 (Bankr. W.D. Va. 1980).  The estate would not be

marshalled or managed without the aforesaid proceedings. *In re* Lucasa Int'l, Ltd., 6 B.R. 717

(Bankr. S.D.N.Y. 1980).

We have seen it what the debtor has been made to go through, incurring huge expenses and

ultimately the net result has been an abysmal dejection and still no success. *In re N. Pipeline

Constr. Co.,* 6 B.R. 928 (Bankr. D. Minn. 1980), *rev'd on other grounds sub nom. N. Pipeline*

*Constr. Co. v. Marathon Pipe Line Co*., 458 U.S. 50, 102 S. Ct. 2858, 73 L. Ed. 2d 598 (1982). Also where property concerns the property of the estate, it is proper for this Court to retain jurisdiction. *McDaniel v. ABN Amro Mortg. Grp*., 364 B.R. 644 (S.D. Ohio 2007) (bankruptcy court abused its discretion in permissively abstaining from hearing Truth in Lending Act and Home Ownership Equity Protection Act adversary claims); *In re S.E. Hornsby & Sons Sand & Gravel Co.*, 45 B.R. 988 (Bankr. M.D. La. 1985).

In sum, federal courts will interpret their power to abstain "in the interest of justice," or "comity," or "respect for state law," 28 U.S.C. § 1334(c), but abstention is usually not appropriate in cases involving property of the debtor, over which the district court has exclusive jurisdiction. 28 U.S.C. § 1334(e)(1). *See also* H.R. Rep. No. 95-595, at 466 (1977) (stating that abstention in such cases would not be "in the interest of justice").

**Claims have been filed here and Claims shall be Objected here in the Bankruptcy Court**

Claims have been filed and we will contest them. The claims are intertwined to the objection to discharge and claims are against property of the estate. Claims issue cannot be arbitrated. *In re Walker,* 551 B.R. 679, 693 (Bankr. M.D. Ga. 2016) (bankruptcy court is "specially equipped to address" automatic stay violations); *In re Hemphill Bus Sales, Inc.*, 259 B.R. 865 (Bankr. E.D. Tex. 2001); *In re Slipped Disc Inc*., 245 B.R. 342 (Bankr. N.D. Iowa 2000); *In re Trident Shipworks, Inc.*, 243 B.R. 130 (Bankr. M.D. Fla. 1999); *In re Edgerton*, 98 B.R. 392 (Bankr. N.D. Ill. 1989*). Brooks v. Midland Funding, L.L.C*. (*In re* Thomas), 592 B.R. 99 (Bankr. W.D. Va. 2018) ("it is nonsensical for the Court to order parties to submit to an arbitrator the task of applying and enforcing a procedural apparatus [Rule 3001] applicable only before this Court"), *aff'd*, *Midland Funding L.L.C. v. Thomas,* 606 B.R. 687 (W.D. Va. 2019); *May v. Midland Funding, L.L.C.* (*In re May*), 591 B.R. 712 (Bankr. E.D. Ark. 2018) (denying arbitration of

proceeding alleging false proofs of claim and related FDCPA claims); *In re Ellswick,* 2016 WL 3582586, at *5 (Bankr. N.D. Ala. June 24, 2016) (bankruptcy court is "uniquely qualified" to decide FDCPA and other claims related to creditor's failure to comply with Bankruptcy Rule 3001 in the filing of its proof of claim); *In re Moses,* 2013 WL 53873 (Bankr. E.D.N.C. Jan. 3, 2013) (denying arbitration of state consumer law counterclaims brought by debtor in response to payday lender's proof of claim); *Yarbrough v. Green Tree Servicing L.L.C.* (*In re* Yarbrough), 2010 WL 3885046 (Bankr. M.D. Ala. Sept. 29, 2010) (strong policy interest exists in keeping adjudication of claim objection in one central forum); *In re Paul,* 399 B.R. 81 (Bankr. D. Mass. 2008) (claim objection is a proceeding derived exclusively from the Code and should be decided by the bankruptcy court, even when basis for objection involves a prepetition breach of contract claim); *In re Hicks,* 285 B.R. 317 (Bankr. W.D. Okla. 2002) (potential costs of arbitration would adversely affect debtor and creditors); *In re Laroque,* 283 B.R. 640 (Bankr. D.R.I. 2002) (denying enforcement of arbitration clause to decide Truth in Lending rescission issues)

As stated earlier, Reiner brought a non dischargibility proceeding and also filed a claim. The kernel of both is same, same conduct that is complained of.   It is clear that creditor should not be permitted to evade the bankruptcy court's exclusive jurisdiction over dischargeability issues under sections 523(a)(2), 523(a)(4), and 523(a)(6) by requiring an arbitration of issues that could have preclusive effects in a dischargeability proceeding. *Ackerman v. Eber* (*In re* Eber), 687 F.3d 1123 (9th Cir. 2012); *Glassman, Edwards, Wyatt, Tuttle & Cox, P.C. v. Wade* (*In re* Wade), 523 B.R. 594 (Bankr. W.D. Tenn. 2014) (also holding that objection to claim not subject to arbitration, because it was inextricably intertwined with dischargeability issue); *In re Koper,* 516 B.R. 707 (Bankr. E.D.N.Y. 2014). *See also Navient Solutions, L.L.C. v. Farmer* (*In re Farmer*), 2017 WL 4619209 (W.D. Wash. Oct. 16, 2017) (affirming denial of motion to stay student loan

dischargeability proceedings so dischargeability issue could be arbitrated); *In re Little*, 610 B.R. 558, 564 (Bankr. D.S.C. 2020) (arbitration of debtor's student loan dischargeability based on undue hardship would inherently conflict with Bankruptcy Code); *Roth v. Butler Univ.* (*In re* Roth), 594 B.R. 672 (Bankr. S.D. Ind. 2018) (denying arbitration of student loan dischargeability proceeding). *MC Asset Recovery L.L.C. v. Castex Energy, Inc.* (*In re Mirant Corp.*), 613 F.3d 584 (5th Cir. 2010) (party seeking to invoke arbitration clause had not raised arbitration issue until after partial denial of its third motion to dismiss); *Lewallen v. Green Tree Servicing, L.L.C.*, 487 F.3d 1085 (8th Cir. 2007) (creditor waived arbitration clause by filing a claim and litigating in bankruptcy court for many months before seeking arbitration); *Howard v. LVNV Funding, L.L.C.*, 2020 WL 7130562 (W.D. Pa. Dec. 4, 2020) (creditor first sought arbitration ten months into litigation and only after litigating various issues).

### Here Reiner waived arbitration by actively engaging with the bankruptcy court and even floating their own Chapter 11 Plan

Reiner waived arbitration by actively participating herein this case. Filing competing plans. Filing dischargebility action. Filing Proofs of Claims.  It was on September 23, 2022, that Reiner moved for relief from stay to enforce arbitration when the case was filed on June 19, 2022.

### Abstention standard in bankruptcy

The abstention doctrines which apply in or regarding a regular federal court setting (where the abstention came about), would not apply with that regularity in a bankruptcy setting. For instance, if a decision of an unclear state law question is clearly important to the debtor's successful bankruptcy, the nexus with the ongoing bankruptcy case may justify a federal court deciding a question from which it would have otherwise abstained under the *Pullman* doctrine. It is the property of the estate that we dealing with here.   Abstention is usually not appropriate in cases

involving property of the debtor, over which the district court has exclusive jurisdiction. 28 U.S.C.

§ 1334(e)(1). *See also* H.R. Rep. No. 95-595, at 466 (1977) (stating that abstention in such cases

would not be "in the interest of justice").

### The Dispute would not be resolved in the religious Arbitration

The declaration of the Debtor highlights the corruption of the religious arbitration and the

inordinate delay and the expenses incurred therein. Reiner can't even say that all this adjudication

would be timely done before his friend arbitrator. Facts speaks for itself. It has taken months and

expenses running in hundreds of thousands of dollars. Even if Reiner makes a declaration, it is

useless now. "A naked assertion that the matter can be timely adjudicated in the state court,

without more, is insufficient to satisfy this requirement." In re *Allied Mechanical and Plumbing*

*Corp. v. Dynamic Hostels Housing Devel. Fund Co., Inc.*, 62 B.R. 873, 878 (Bankr. S.D.N.Y.

1986) And further the Timeliness is anchored to something more important,

> The phrase "timely adjudication" is not defined in the Bankruptcy Code. Courts interpreting this phrase have focused on whether allowing an action to proceed in state court will have any unfavorable effect on the administration of a bankruptcy case.... This focus is in accord with the fact that Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate.

In re *Midgard,* 204 B.R. 764, 778 (10th Cir. BAP 1997).

### Is there an arbitration at all?

It has been mentioned earlier that the Debtor has not entered into any arbitration agreement.

It is for this Court to decide if there is any arbitration agreement. The question of whether the

parties have submitted a particular dispute to arbitration, i.e. the 'question of arbitrability,' is 'an

issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'"

*Howsam v. Dean Witter Reynolds, In*c., 537 U.S. 79, 79 (2002) (quoting *AT&T Tech., Inc. v.*

*Comms. Workers,* 475 U.S. 643, 649 (1986))). Here, Reiner and his team waived the arbitration, by submitting competing plans. Participated in the bankruptcy processes for long.  See *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995) ("an election to proceed before a nonarbitral tribunal ... is a presumptive waiver of the right to arbitrate")).

Reiner shall flaunt that the state court held that there was an arbitration, however the same could not have been, as the attorney Vidder for Reiner misled the state supreme court, using a pre-incorporation agreement between the Debtor and Reiner which has the word arbitration, but the same was deemed to have been nullified by the virtue of incorporation.  And there are no shareholder agreement showing any arbitral agreement.

Irrespective of the same, the Court can deny sending the matter to the arbitrator. *In re Thorpe Insulation Co.,* 671 F.3d 1011 (9th Cir. 2012); *In re White Mountain Mining Co.*, 403 F.3d 164 (4th Cir. 2005); *In re Gandy,* 299 F.3d 489 (5th Cir. 2002); *In re United States Lines,* Inc., 197 F.3d 631 (2d Cir. 1999); *Selcke v. New England Ins. Co.,* 995 F.2d 688 (7th Cir. 1993); *In re Brown*, 354 B.R. 591 (D.R.I. 2006); *In re Spectrum Info. Techs., Inc.*, 183 B.R. 360 (Bankr. E.D.N.Y. 1995); *In re Sacred Heart Hosp.,* 181 B.R. 195 (Bankr. E.D. Pa. 1995).

### Every abstention factor militates against Abstention

Running the facts of this case through the twelves factors as enunciated by the *Second Circuit* outweigh abstention. The twelve factors are:

> (1) the effect or lack thereof on the efficient administration of the [bankruptcy] estate if a Court recommends abstention,
> (2) the extent to which state law issues predominate over bankruptcy issues,
> (3) the difficulty or unsettled nature of the applicable state law,
> (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court,
> (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334,
> (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case,
> (7) the substance rather than form of an asserted "core" proceeding,

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court,
(9) the burden of [sic] [the court's] docket,
(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties,
(11) the existence of a right to a jury trial, and
(12) the presence in the proceeding of nondebtor parties.

*In re Baumann & Sons Buses, Inc., N*o. 20-08195, 2022 WL 38294, at *6 (Bankr. E.D.N.Y. Jan. 4, 2022) quoting *Osuji v. HSBC Bank, U.S.A., Nat'l Ass'n*, 580 B.R. 605, 612 (E.D.N.Y. 2018) (in turn quoting *In re Petrie Retail, Inc.,* 304 F.3d 223, 232 (2d Cir. 2002)).

1.    **The effect or lack thereof on the efficient administration of the [bankruptcy] estate if a Court recommends abstention.**

This bankruptcy case will be stalled, if the case is referred back to the tribunal of Reiner's friend. It has taken so long and when even merits have not been considered for long.  Efficiency of the Court is enhanced when all activities are under its umbrella.  Precisely why we have the administration assigning related case to the same judge.   "[A]ssigning related cases to different judicial officers is inefficient, wasteful of scarce judicial resources, and may result in inconsistent determinations ...." *In re: Procedure for the Assignment & Reassignment of Related Cases & Proceedings,* No. SX-2020-MC-00087, 2020 WL 7232106 *1, 2020 V.I. LEXIS 75 *1 (V.I. Super. Ct. Dec. 3, 2020).  Here there shall be duplication not only of the judge, but the attorneys too. Jewish religious arbitration are a specialized arbitration forum demanding special calls. *See, e.g., Habitat Educ. Ctr., Inc. v. Kimbell*, 250 F.R.D. 390, 397 (E.D. Wis. 2008); N.D. Cal. Civ. R. 3-12 (finding that duplication would be  "unduly burdensome duplication of labor and expense" if not heard by same judge).

While this Court continues to adjudicate on the objection to the proofs of claim, discharge issues, marshalling of estate assets, and having the arbitration proceedings based on the same facts and issues would cause causes substantial inconvenience, unnecessary expense and duplication of

efforts.  Also, if certain issues are likely to be litigated in the bankruptcy forum in any case, such as in the allowance of a claim, there is a tendency to retain jurisdiction over those issues for all purposes.  See also, *n re Lucasa Int'l, Ltd*., 6 B.R. 717 (Bankr. S.D.N.Y. 1980); *In re Bros. Coal Co.,* 6 B.R. 567 (Bankr. W.D. Va. 1980).

There is no doubt that the under the Court supervision would there be expeditious resolution of the matter and in such cases the courts usually retain the case and it must not create any exception here. *See, e.g.*, *In re Al Copeland Enters., Inc.,* 153 F.3d 268 (5th Cir. 1998). The Court upon balancing the interest of the Debtor, Reiner and or other parties will find that the Court continues to retain jurisdiction on the entire case and all aspect of the controversy.

**A.**  A subset of efficient administration is conservation of resources and not depletion. The  Debtor has been financially wrecked by the arbitration pending for so long exceeding half a million and that too without any end.  The Court must not abstain from supervising over the dispute and finishing it expeditiously, it won't happen in the religious arbitration—the religious arbitration has been nothing other than a never-ending exploitation of the Debtor. Debtor is financially wrecked. The Debtor has other creditors and responsibilities. One major encumbrance upon the Debtor is to maximize the value of the estate. It won't happen if the Court abstain from entertaining the underlying disputes.  I*n re First Alliance Mortg. Co.,* 280 B.R. 246 (C.D. Cal. 2002) (arbitration of class TILA and UDAP claims against debtor mortgage lender would deplete estate assets and negatively impact creditors).

**B.**  Centralization of dispute processing is one big aim and benefit of bankruptcy case.  There is no doubt that arbitration agreements enforcement is often in direct conflict with the goal of bankruptcy jurisdiction to have one centralized forum for the prompt resolution of disputes affecting the bankruptcy estate. *Zimmerman v. Cont'l Airlines, Inc.*, 712 F.2d. 55 (3d Cir. 1983); *In*

*re Hemphill Bus Sales, Inc.*, 259 B.R. 865 (Bankr. E.D. Tex. 2001); *In re* Knepp, 229 B.R. 821 (Bankr. N.D. Ala. 1999).

**C**. In exercising discretion whether to enforce an arbitration agreement, bankruptcy courts generally consider the degree to which (1) the nature and extent of the litigation and evidence would make the judicial forum preferable to arbitration, (2) the extent to which special expertise is necessary to resolve the dispute, and (3) the extent to which the bankruptcy court may more efficiently and economically resolve the dispute without depleting estate assets. The issues being raised before this Court are very germane to the Court jurisdiction, allowances and disallowances of claims, dischargebility of the Debtor. This Court has exclusive jurisdiction on such matter. *In re Walker*, 551 B.R. 679, 693 (Bankr. M.D. Ga. 2016) (bankruptcy court is "specially equipped to address" automatic stay violations); *In re Hemphill Bus Sales, In*c., 259 B.R. 865 (Bankr. E.D. Tex. 2001); *In re Slipped Disc Inc*., 245 B.R. 342 (Bankr. N.D. Iowa 2000); *In re Trident Shipworks,* Inc., 243 B.R. 130 (Bankr. M.D. Fla. 1999); *In re Edgerton,* 98 B.R. 392 (Bankr. N.D. Ill. 1989).  Reiner has filed proof of claim. It shall be objected to and that favors solution in the bankruptcy forum of claims. And prompt adjudication of the claim is necessary to the Chapter 13 plan confirmation process.

**D.** Timeliness of the proceeding in the other state courts or the arbitration is very questionable, rather it is pernicious to see what happened to the Debtor and expenses incurred thereby. Despite several sessions, there was no result.  Reiner bears the burden to show that arbitration would have completed timely, *Stoe v. Flaherty,* 436 F.3d 209, 219 n.5 (3d Cir. 2006), and that he can never do, as we have seen now the past arbitration history. Nor is it easy to determine whether arbitration proceeding will be "timely adjudicated," either in terms of what would be "timely" or in terms of predicting the timing of religious arbitration proceedings.

**2.    The extent to which state law issues predominate over bankruptcy issues and or any Unsettled state law**

Here there is no unsettled state law which shall be necessary to resolve of the issues core or non-core.  The applicable state law is neither unsettled nor difficult to apply.  It is true that the estate and property dispute will have the state law application, but that alone does not make the law unsettled.  *In re Cole Assoc. Inc.,* 7 B.R. 154 (Bankr. D. Utah 1980) (bankruptcy court routinely hears questions under Uniform Commercial Code).

It is also clear with the issues pending here, allowance and disallowance of claims, the discharge litigation, the arbitration litigation will not dispose of *all* claims presented in this bankruptcy case and forum. *Wiley v. Portfolio Recovery Assoc.,* 2020 WL 6136146 (D. Minn. Oct. 19, 2020); *Jackson v. Safeguard Props*., L.L.C., 2017 WL 1209544, at *1–2 (N.D. Ill. Mar. 31, 2017); *Visceglie v. Seterus, In*c., 2017 WL 4863903, at *2–4 (M.D. Fla. May 1, 2017); *Nyberg v. Portfolio Recovery Assoc.*, 2016 WL 8711506 (D. Or. Jan. 22, 2016) (while many issues will be identical, not all will be); F*ritz v. Resurgent Capital Serv*., LP, 955 F. Supp. 2d 163, 175 (E.D.N.Y. 2013); *Owens v. Ronald R. Wolf & Assoc., P.L*., 2013 WL 6085121, at *5 (S.D. Fla. Nov. 19, 2013).

And also, even if the arbitration [which there is none] is read liberally and it might overlap with the issues confronted by the Court here, it does not mean the Court abstain—"[a]bstention is not in order simply because a pending state-court proceeding involves the same subject matter." *Sprint Communications, Inc. v. Jacobs,* 571 U.S. 69, 134 S. Ct. 584, 588, 187 L. Ed. 2d 505 (2013).

**3.  The presence of a related proceeding commenced in state court or other non-bankruptcy court.**

There is no proceeding pending between the parties in any state court. Reiner has initiated proceeding in this Court objecting to discharge and filed proof of claim. And the Mendel has claims under the racketeering laws against Reiner and religious arbitrator for swindling him and also for using unlawful means to achieve unlawful result, this violating Hobbs act.  These facts are clear indicator why this Court must not abstain and must not enforce any alleged arbitration agreement. *See Moses v. CashCall, Inc.*, 781 F.3d 63 (4th Cir. 2015) (arbitration not required for determination of whether claim included illegal interest, but was required for debtor's damage claim against creditor); *Midland Funding L.L.C. v. Thomas*, 606 B.R. 687 (W.D. Va. 2019) (denying arbitration on sanctions motion, issues of whether a claim is enforceable, and FDCPA claim revolving around compliance with bankruptcy procedures); A*llied Title Lending, L.L.C. v. Taylor,* 420 F. Supp. 3d 436 (E.D. Va. 2019) (denying arbitration of debtor's proceeding challenging validity of claim); *In re* Brown, 354 B.R. 591 (D.R.I. 2006) (affirming bankruptcy court's exercise of discretion to deny arbitration of core proceeding involving TILA rescission claim); *In re Serv. Marine Indus., Inc.,* 2000 WL 1673061 (E.D. La. Nov. 3, 2000) (staying the bankruptcy proceeding to allow a creditor to arbitrate an objection to its claim would prejudice the rights of all other creditors and delay the administration of the debtor's bankruptcy); *Brooks v. Midland Funding, L.L.C.* (*In re Thomas*), 592 B.R. 99 (Bankr. W.D. Va. 2018) ("it is nonsensical for the Court to order parties to submit to an arbitrator the task of applying and enforcing a procedural apparatus [Rule 3001] applicable only before this Court"), *aff'd*, *Midland Funding L.L.C. v. Thomas,* 606 B.R. 687 (W.D. Va. 2019); *May v. Midland Funding, L.L.C.* (*In re* May), 591 B.R. 712 (Bankr. E.D. Ark. 2018) (denying arbitration of proceeding alleging false proofs of claim and related FDCPA claims); *In re Ellswick*, 2016 WL 3582586, at *5 (Bankr. N.D. Ala. June 24, 2016) (bankruptcy court is "uniquely qualified" to decide FDCPA and other claims related to creditor's failure to comply with

Bankruptcy Rule 3001 in the filing of its proof of claim); *In re Moses,* 2013 WL 53873 (Bankr. E.D.N.C. Jan. 3, 2013) (denying arbitration of state consumer law counterclaims brought by debtor in response to payday lender's proof of claim); *Yarbrough v. Green Tree Servicing L.L.C.* (*In re* Yarbrough), 2010 WL 3885046 (Bankr. M.D. Ala. Sept. 29, 2010) (strong policy interest exists in keeping adjudication of claim objection in one central forum); *In re Paul,* 399 B.R. 81 (Bankr. D. Mass. 2008) (claim objection is a proceeding derived exclusively from the Code and should be decided by the bankruptcy court, even when basis for objection involves a prepetition breach of contract claim); *In re* Hicks, 285 B.R. 317 (Bankr. W.D. Okla. 2002) (potential costs of arbitration would adversely affect debtor and creditors); *In re Laroque,* 283 B.R. 640 (Bankr. D.R.I. 2002) (denying enforcement of arbitration clause to decide Truth in Lending rescission issues).

4.        **The jurisdictional basis, if any, other than 28 U.S.C. § 1334,**

There is no part of the Dispute which does not fall into the direct jurisdiction of this Court. Dischargibilty action, allowance and disallowance of claims, claims of the Debtor to enrich the estate—none of these issues depends on a independent jurisdictional statute other than section 1334 of Title 28. As properly laid out in the foregoing including the Adversary Proceeding regarding discharge of the Debtor, all are core proceedings with the Court given full authority to enter decision. And the these actions are something arises under the bankruptcy code.  Clearly, "[a]s noted above, this Adversary Proceeding is based upon the Bankruptcy Code and the Bankruptcy Rules, and there is no basis for federal jurisdiction other than 28 U.S.C. § 1334." *In re Taub,* 413 B.R. 69, 80 (Bankr. E.D.N.Y. 2009). Also, dischargability related proceedings are not meant for arbitration. Reiner also should not be permitted to evade the bankruptcy court's exclusive jurisdiction over dischargeability issues under sections 523(a)(2), 523(a)(4), and 523(a)(6) by requiring an arbitration of issues that could have preclusive effects in a

dischargeability proceeding.  See  *Ackerman v. Eber* (*In re Eber*), 687 F.3d 1123 (9th Cir. 2012); *Glassman, Edwards, Wyatt, Tuttle & Cox, P.C. v. Wade* (*In re Wade*), 523 B.R. 594 (Bankr. W.D. Tenn. 2014) (also holding that objection to claim not subject to arbitration, because it was inextricably intertwined with dischargeability issue); *In re Koper,* 516 B.R. 707 (Bankr. E.D.N.Y. 2014). *See also Navient Solutions, L.L.C. v. Farme*r (*In re Farmer*), 2017 WL 4619209 (W.D. Wash. Oct. 16, 2017) (affirming denial of motion to stay student loan dischargeability proceedings so dischargeability issue could be arbitrated); *In re Little*, 610 B.R. 558, 564 (Bankr. D.S.C. 2020) (arbitration of debtor's student loan dischargeability based on undue hardship would inherently conflict with Bankruptcy Code); *Roth v. Butler Univ*. (*In re* Roth), 594 B.R. 672 (Bankr. S.D. Ind. 2018) (denying arbitration of student loan dischargeability proceeding).

This test for abstention based on jurisdiction also does not apply her.

**5.      The degree of relatedness or remoteness of the proceeding to the main bankruptcy case.**

This case deals with the administration of the estate, augmentation of the estate, rehabilitation of the Debtor beside the Debtor's discharge objection and claims of Reiner v. claims of the estate against him. All these are very closed related to this Chapter 13 case.  The Debtor's whole Chapter 13 Plan shall depend on the outcome of these proceedings.

**6.      The substance rather than form of an asserted "core" proceeding.**

As said in the foregoing and as is clear from the dischargibilty proceeding commenced by Reiner against Mendel are claims that arise under the Bankruptcy Code. And the issues related to the allowance of Reiner claim.   Yes, it is true that the claim allowance shall be based on the state law. Non-bankruptcy law is often applied exclusively by bankruptcy courts in determining whether a creditors' claim should be allowed and this reliance on applicable non-bankruptcy law does not transform the proceeding into a non-core matter. Section 502(b) of the Bankruptcy Code mandates

a procedure for bankruptcy courts to determine the amount and allowance of claims if an objection

to the claim is filed. It provides that "the court, after notice and hearing, shall determine the amount

of such claim . . . and shall allow such claim in such amount." 11 U.S.C. § 502(b). *See also* Fed.

R. Bankr. P. 3007. The bankruptcy court may disallow the claim if it is "unenforceable against the

debtor" based on the contract between the parties or "applicable law." 11 U.S.C. § 502(b)(1).  Thus,

a claim objection proceeding is unique to bankruptcy law and can arise only in a bankruptcy case,

it is a core proceeding irrespective of whether the objection itself is grounded in non-bankruptcy

law. As so aptly put by the Fifth Circuit,

> A claim against the estate is instituted by filing a proof of claim as
> provided by the bankruptcy rules. The filing of the proof invokes the
> special rules of bankruptcy concerning objections to the claim, estimation
> of the claim for allowance purposes, and the rights of the claimant to vote
> on the proposed distribution. Understood in this sense, a claim filed
> against the estate is a core proceeding because it could arise only in the
> context of bankruptcy. Of course, the state-law right underlying the
> claim could be enforced in a state court proceeding absent the
> bankruptcy, but the nature of the state proceeding would be different from
> the nature of the proceeding following the filing of a proof of claim

*In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987). Indeed, that is the perception of several courts.  *In*

*re Thorpe Insulation Co*., 671 F.3d 1011 (9th Cir. 2012) (objection to creditor's proof of claim is

core proceeding because resolution of claim, even if it implicates nonbankruptcy law, directly

impacts administration of bankruptcy case); *In re Martinez,* 2007 WL 1174186 (Bankr. S.D. Tex.

Apr. 19, 2007) (rejecting argument that objection to creditor's claim based solely on Truth in

Lending Act and state law is non-core proceeding). *See also In re Paul,* 399 B.R. 81, 111 (Bankr.

D. Mass. 2008) (a claim objection is a proceeding derived exclusively from the Code and should

be decided by the bankruptcy court, even when the basis for the creditor's claim involves a

prepetition breach of contract claim); *In re Blanchard Transp. Services, Inc.,* 2008 WL 619379

(Bankr. E.D.N.C. Feb. 29, 2008) (debtor's challenge to third party's setoff claim, which had effect

of reducing the debt the third party owed to debtor, was not subject to arbitration as it affected property needed to fund reorganization plan).

**7.      The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court.**

This prong clearly weighs against abstention. The whole damage is done by the religious arbitration controlled by Reiner. Mendel Declaration speaks for itself. It is real.  Also, as stated earlier, the dischargibility complaint is grounded or rather arise under the Bankruptcy Code and Bankruptcy Rules. There is no state law here. Also very intertwined with that the is allowance of claims issue.  Severance of proceeding has to be seen the from perspective of the entire framework of the case.  The Court has to see Reiner dispute in relation to the overall bankruptcy case and the Code's goal of centralized jurisdiction over property of the estate. Adversary proceedings and contested matters in bankruptcy typically involve legal claims that are based solely or primarily on non-bankruptcy law [unlike here], but that factor is not determinative of whether the proceeding may be inextricably intertwined with other matters involving the bankruptcy estate or the administration of the bankruptcy case. *E.g.*, *In re Hostess Brands, Inc.*, 2013 WL 82914 (Bankr. S.D.N.Y. Jan. 7, 2013) (refusing to compel arbitration of contract dispute underlying the debtors' motion for use of cash collateral).  See also, *Ford Motor Credit Co. v. Roberson*, 2010 WL 4286077 (D. Md. Oct. 29, 2010) (arbitration of adversary proceeding brought in chapter 13 case involving repossession of automobile and alleged violation of discharge order entered in earlier chapter 7 case would substantially interfere with debtor's effort to reorganize, particularly because confirmation of debtor's chapter 13 plan is contingent upon outcome of adversary proceeding).

It would be highly inequitable to have the Debtor appear before a corrupt arbitrator. As is clear from Mendel declaration, it is a nightmare and definitely unconscionable to have him continue to pay such an exorbitant process  and with a definite results set against him.

24

As stated earlier, the centralization of all bankruptcy claims in one forum, unhampered by concurrent proceedings in other forums, is a "fundamental tenet of bankruptcy law." *See also MBNA Am. Bank v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006) ("bankruptcy policy exerts an inexorable pull towards centralization"; quoting *In re* U.S. Lines, 197 F.3d at 640); *In re U.S. Lines, Inc.,* 197 F.3d 631, 640 (2d Cir. 1999) (one of the primary purposes of bankruptcy "effectuated by Sections 362 and 105 of the Code" is to "allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas"; quoting *Shugrue v. Air Line Pilots Ass'n Int'l* (*In re Ionosphere Clubs, Inc.*), 922 F.2d 984, 989 (2d Cir. 1990)). Furthermore, by staying all other proceedings upon filing for bankruptcy, the court protects the rights of creditors who would be prejudiced if the limited assets of a bankrupt estate were used to pay outside costs, such as those associated with arbitration. *See In re Slipped Disc, Inc.,* 245 B.R. 342, 344 (Bankr. N.D. Iowa 2000); *In re Knepp*, 229 B.R. 821 (Bankr. N.D. Ala. 1999).

The case deals with the financial rehabilitation of the Debtor and also save his house from plunder like claims. Debtor has his own set of claims. Thus when a proceeding concerns property of the estate, over which the district court has exclusive jurisdiction, the bankruptcy forum is normally more appropriate for the litigation of that proceeding. *McDaniel v. ABN Amro Mortg. Grp.*, 364 B.R. 644 (S.D. Ohio 2007) (bankruptcy court abused its discretion in permissively abstaining from hearing Truth in Lending Act and Home Ownership Equity Protection Act adversary claims); *In re S.E. Hornsby & Sons Sand & Gravel Co.,* 45 B.R. 988 (Bankr. M.D. La. 1985). All these issues are very germane to this Court. *In re Janssen,* 396 B.R. 624 (Bankr. E.D. Pa. 2008) (in granting debtor's motion to reopen chapter 13 case for purpose of determining whether debtor had cured his prepetition mortgage default, court refused to abstain despite pending

state court foreclosure case, in part due to court's interest in protecting integrity of bankruptcy system).

**8.        The burden of [the court's] docket.**

The Court can take a judicial notice of the number of the Chapter 13 cases. It had dropped dramatically. Also, there is hardly any Chapter 13 that has contested hearings or adversary proceeding as we see here.  So the burden on the docket is negligible.  Also, this factor is neutral on the question of permissive abstention.

**9.        The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties.**

There is no forum shopping here. The Debtor has already been through a never-ending arbitration ordeal with no results in sight and have expended all his savings. He has sought protection in the federal court for protection.  Also, the Adversary Proceeding is a proceeding by Reiner.  Mendel sought the bankruptcy protection to save his family and himself from racketeering overreach in the name of arbitration.   "For forum shopping to become a significant factor in the abstention calculus, it must rise to a level demonstrating an attempt to abuse or manipulate the judicial process." _In re Schlotzsky's, Inc.,_ 351 B.R. 430, 436 (Bankr. W.D. Tex. 2006).  Here as is clear from Mendel's declaration, he was a victim of an racketeering enterprise operating as a religious arbitration.

**10.      The existence of a right to a jury trial**

There is no jury trial issues implicated here. Reiner wants to the dispute to be heard by his friend Rabb arbitrator. None of the parties here are seeking jury trial. So, this test does not apply.

**11.      The presence in the proceeding of non-debtor parties.**

There is no doubt about the Court's reach and jurisdiction over the parties. Reiner has already availed the process by filing complaint and proof of claim. All parties to the dispute are in

this jurisdiction.  Additionally, Bankruptcy Courts can exercise jurisdiction over non-debtors and third parties. See *In re Opti-Gage, Inc.,* 128 B.R. 189 (Bankr.S.D.Ohio 1991); *In re Carver,* 144 B.R. 643 (S.D.N.Y. 1992).

## <u>Conclusion</u>

Because federal courts have an obligation to exercise the jurisdiction properly given to them, "there is a presumption in favor of the exercise of federal jurisdiction and against abstention." *Rahl v. Bande*, 316 B.R. 127, 135 (S.D.N.Y. 2004).  And "[t]he movant bears the burden of establishing that permissive abstention is warranted." *In re Residential Cap., LLC,* 515 B.R. 52, 67 (Bankr. S.D.N.Y. 2014). But the movant Reiner has failed to establish any basis for permissive abstention.

Wherefore, it is respectfully submitted that the Court denies any request for abstention of any issues or proceeding pending before the Court.

Dated: New York New York
February 17, 2023

*/s/karamvirdahiya*
Karamvir Dahiya
Dahiya Law Offices, LLC
75 Maiden Lane Suite 606
New York New York 10038
Tel: 212 766 8000